**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NATASHA OSBOURNE,

|  |  |
|---|---|
| | **Case No.:** |
| **Plaintiff,** | **COMPLAINT** |
| | **JURY TRIAL DEMANDED** |

-against-

**TCPRNC LLC d/b/a/THE PLAZA REHAB AND**
**NURSING CENTER,**
**CITADEL CONSULTING GROUP, LLC d/b/a CITADEL**
**CARE CENTERS, LLC, UHP ADMINISTRATORS, INC.**
**d/b/a UHP ADMINISTRATORS,**

Defendants.

-------------------------------------------------------------------X

Plaintiff NATASHA OSBOURNE ("Plaintiff"), by her attorneys, THE SIEGEL

LAW FIRM, P.C., as and for her Verified Complaint, as against Defendants the TCPRNC

LLC d/b/a Plaza Rehab and Nursing Center ("Plaza"), the Citadel Consulting Group, LLC

dba Citadel Care Centers, LLC ("Citadel") (collectively "Defendants"), and UHP

Administrators, Inc. dba UHP Administrators ("UHP") respectfully alleges as follows:

## JURISDICTION AND VENUE

1.      Plaintiff brings this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C

§§201 *et seq.*, Articles 6 and 19 of the New York Labor Law ("NYLL"), Title 12, Part 142, of the

New York Codes, Rules, and Regulations ("NYCRR"), to recover unpaid overtime and lost wages,

and New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law

("NYCHRL") for damages based on discrimination, retaliation, defamation, and other relief

related to her employment with Defendants.

1

2.     Jurisdiction over Plaintiffs' FLSA claims is based upon Section 216(b) of the FLSA, 29 U.S.C. §216(b), and upon 28 U.S.C. §1331.

3.     Venue in this district is appropriate under 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to these claims occurred in this judicial district.

## PARTIES

4.     At all relevant times, Plaintiff was and is a resident of the State of New York and County of New York.

5.     Plaintiff worked for Defendants at the Plaza Rehab and Nursing Center located at 100 West Kingsbridge Road, Bronx, New York, which was acquired by, merged with Citadel Consulting Group, LLC, and/or entered a partnership with Citadel or its subsidiaries.

6.     Upon information and belief, the Plaza Rehab and Nursing Center is a d/b/a for defendant TCPRNC, LLC.

7.     Upon information and belief, TCPRNC LLC is a domestic Limited Liability Company, with its primary place of business in the Bronx, New York.

8.     Upon information and belief, the Citadel Consulting Group, LLC does business as Citadel Care Centers, LLC, as a healthcare provider group with Plaza as a member.

9.     Upon information and belief, at all relevant times, Citadel Consulting Group, LLC is a domestic Limited Liability Company, with its principal place of business in Brooklyn, New York.

10.     Upon information and belief, Plaza is a nursing home, a residential nursing facility, assisted living and short-term residential rehabilitation center.

11.    Upon information and belief, Plaza is a member of the Citadel Health Group, which handles payroll, benefits and certain human resources and management functions for Plaza as a member, and for other similar facilities.

12.    Upon information and belief, UHP Administrators, Inc. does business as UHP Administrators, provides healthcare administration and COBRA compliance administration services, including to the Plaza and Citadel at all relevant times.

13.    Upon information and belief, at all relevant times, UHP was a corporation, with its principal place of business in Brooklyn, New York.

14.    Based upon all of the aforesaid, Plaintiff was a covered employee, and Defendants were covered employers within the meaning of the FLSA and the NYLL, and, at all relevant times, jointly employed Plaintiff.

15.    At all times material, Plaintiff was an employee of Defendants.

16.    The annual gross volume of sales made or business done by the Defendants for the years 2021, 2022, and 2023 were not less than $500,000.

17.    Defendants are engaged in the operation of an institution primarily engaged in the care of the sick, the aged, or mentally ill who reside on the premises.

18.    Specifically, Defendants perform the following services: providing nursing home care, residential nursing facility care, assisted living and short-term residential rehab care.

## **FACTUAL BACKGROUND**

19.    At all relevant times, defendants were engaged in the business of healthcare, including rehabilitation and nursing care.

3

20.     On or about September 27, 2021, Plaintiff was hired by the Plaza as a Recruitment Coordinator, which job she performed for approximately the first year of her employment, earning an annual salary of $55,000.00.

21.     As a recruiter, she identified potential Plaza employees, interviewed them and assisted with their onboarding, entered newly hired employees into the criminal history record check, managed the work opportunity tax credit, facilitated new hire orientation, processed all employee terminations, and terminated insurance coverage.

22.     Approximately one year after working in the recruiter role, Plaintiff was promoted to the position of benefits coordinator, a position for which she had no prior training or experience, earning an annual salary of $60,000.00, which was thereafter increased to $68,000.00.

23.     As benefits coordinator, Plaintiff tracked employees' days worked, sick days and paid time off, facilitated new hire onboarding and background checks, answered employee questions generally relating to their benefits, and retained some of her recruiter job functions including processing terminations of employment and insurance coverage.

24.     Both the recruiter and benefits coordinator positions were non-exempt, despite Defendants misclassifying Plaintiff as an exempt employee.

25.     None of Plaintiff's job duties or functions included making policies, structuring programs or benefits, or engaging in tasks that required discretion and independent judgment on matters of significance, and Plaintiff did not supervise any other employees.

26.     Plaintiff was employed by Defendants between September 27, 2021 and February 22, 2023, totaling 73 weeks.

<u>Overtime Claims.</u>

27.     Defendants have a gross annual business of at least $500,000.00.

28.     During her employment with Defendants, Plaintiff engaged in interstate commerce. Specifically, the supplies and materials utilized by Plaintiff in the performance of her job duties traveled throughout interstate commerce and telephone calls and communications made by Plaintiff for Defendants were with individuals in many different states.

29.     Plaintiff was a non-exempt employee, but was misclassified as exempt by Defendants.

30.     Plaintiff regularly worked more than 77 hours each week, but was not paid straight time or an overtime premium for any of the hours that she worked in excess of 40 per workweek.

31.     Specifically, for the week ending February 10, 2023, Plaintiff worked 78 hours.

32.     For the week ending Nov 11, 2022, Plaintiff worked 78 hours.

33.     Although Plaintiff clocked in and out from the office timeclock biometrically with her fingerprint, Caldwell reviewed Plaintiff's timestamped hours and changed and altered Plaintiff's time records, thereby shaving her hours to 37.5 hours each week.

34.     Moreover, Plaintiff continued working from home approximately 2 hours per day after leaving work on weekdays and worked approximately four hours each weekend approximately two weekends per month, was not provided with a method to record this time and was not compensated for this time.

35.     Plaintiff was nonexempt and earned $68,000.00 per year, and her hourly rate was

$32.68 per hour and her overtime rate was $49.04 per hour based on a 40-hour workweek, or $34.87 hourly and $52.0 per hour for overtime based on a 37.5-hour workweek.

36.     Based upon the foregoing, Plaintiff is entitled to one-and-one-half her hourly wage for all hours that she worked in excess of 40 per workweek.

Gender Discrimination, Retaliation and Defamation Per Se.

37.     On or about February 15, 2023, Plaintiff complained to her supervisor, Kendra Caldwell ("Caldwell") in connection with unfair and unequal treatment she was experiencing, as well as on behalf of other similarly situated female employees, compared to a similarly situated male employee, Jason Ramos ("Ramos").

38.     Ramos held the position of recruiter, a job title previously held by Plaintiff. Ramos was permitted to start work later each day than the women and was the first out of the office each day, working fewer hours than Plaintiff and the other female in the department without recourse, where Plaintiff was not permitted by Caldwell to leave early when she asked.

39.     On or about February 15, 2023, Plaintiff complained to Caldwell that Ramos was given far more leeway to make errors than Plaintiff and other female employees, which difference in treatment was a result of the gender disparity.

40.     Of specific concern, which Plaintiff conveyed to Caldwell, Ramos made errors that would result in eleven (11) new hires not being paid, in violation of the FLSA and NYLL.

41.     On or about February 16, 2023, Plaintiff complained to Caldwell that new hires were not being paid that week because Ramos had made errors in the onboarding process, which Plaintiff reasonably believed to be a violation of a law, rule or regulation, including violations of the FLSA and NYLL.

42.     During their discussions on February 15 and February 16, 2023, Plaintiff further complained that Ramos' shortcomings were continuously overlooked, while Plaintiff was instructed to correct his errors and handle some of his job duties.

43.     Plaintiff complained to Cauldwell that if Plaintiff, or the other female in the department made errors like Ramos, that Plaintiff frequently was instructed by Cauldwell to fix, including the one resulting in a missed salary payment to new hires, they would have been treated more harshly by Cauldwell or terminated.

44.     Plaintiff complained that Cauldwell favored Ramos, and commented to Cauldwell to the effect that she was like a mother hen with a son and two daughters, and you favor your son.

45.     Instead of addressing Plaintiff's protected complaints regarding what Plaintiff reasonably believed to be violations of the NYLL for failing to pay wages and complaints that Plaintiff was treated differently and worse than Ramos by Cauldwell based on her gender, in retaliation for the protected complaints that Plaintiff made to Caldwell, Caldwell mercilessly chastised Plaintiff.

46.     Additionally, Caldwell fabricated outrageous allegations against Plaintiff, publishing them to other employees working for Defendants, which resulted in Plaintiff's pretextual termination.

47.     Specifically, after Plaintiff made protected complaints to Caldwell, Caldwell maliciously fabricated allegations that Plaintiff engaged in threatening behavior against Caldwell, including barricading her in her office, and threatening her life and safety, specifically accusing Plaintiff of workplace violence, and firing her for it.

48.     The aforesaid allegations were complete fabrications, not based on any factual

matter, and designed to punish and retaliate against Plaintiff for the protected complaints that she had made.

49.    Plaintiff was then terminated on the false and defamatory pretextual grounds that she had falsely imprisoned and assaulted Caldwell and threatened her life and safety, in violation of Plaza's Workplace Violence and Professional Misconduct Policies.

50.    Accordingly, Plaintiff was not terminated for cause.

ERISA Claim

51.    At the time that Plaintiff was terminated, she was not provided with any notices related to her health insurance coverage or COBRA continuation coverage, as required under ERISA and New York State Law.

52.    As a result of Plaintiff's pretextual termination, she lost her income, and was not provided with COBRA continuation coverage, which resulted in her accumulating substantial uncovered medical bills through on or about February 1, 2024.

## AS AND FOR A FIRST CAUSE OF ACTION
**(Violation of the Fair Labor Standards Act 29 U.S.C. §201 *et seq.* –Failure to Compensate for Overtime)**

53.    Plaintiff repeats and reallege each and every previous allegation as if fully set forth herein.

54.    The FLSA regulates the payment of wages by employers whose employees are "engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §206(a)(1).

55.    The FLSA regulates the payment of wages by employers

56.     Defendants were and are subject to the requirements of the FLSA because Defendants are an enterprise engaged in commerce or in the production of goods for commerce.

57.     At all times relevant to this Complaint, Defendants have, and continue to have, two (2) or more employees, including Plaintiff, handle goods or materials that have moved in interstate commerce, including but not limited to office equipment and supplies, medical equipment, transportation vehicles, construction equipment and materials, and made telephone calls and communications with individuals in numerous states.

58.     Defendants' activities fall within an enterprise, as they are a facility that provides nursing, rehabilitation, and personal care services.  The patients that Defendants care for include those that are sick or aged, and includes patients who reside on the premises.

59.     The business activities of the Defendants are related and performed through unified operation or common control for a common business purpose and constitute an enterprise, or joint employer, within the meaning of the FLSA.

60.     For all relevant periods, the gross annual volume of sales made or business done by Defendants was not less than $500,000.00.

61.     At all times relevant to this action, Plaintiff was entitled to the rights, benefits, and protections granted by the FLSA, 29 U.S.C. §207 *et seq.*

62.     Section 207(a)(1) of the FLSA provides that an employee must be paid overtime, equal to at least one and one-half times the employee's regular rate of pay, for all hours worked in excess of forty (40) per week.

63.     By the above-alleged conduct, Defendants have violated the FLSA by failing to pay

Plaintiff overtime compensation as required by the FLSA for all hours Plaintiff worked in excess of forty (40) per week.

64.    By the above-alleged conduct, Defendants have violated the FLSA by failing to pay Plaintiff one and one-half times her regular rate of pay for hours worked in excess of forty (40) per workweek.

65.    Defendants were aware that Plaintiff worked more than forty (40) hours per week.

66.    Defendants did not inform Plaintiff that she was entitled to overtime for hours worked over forty (40) each week, notwithstanding that she was paid a salary.

67.    Section 13 of the FLSA, 29 U.S.C. §213, exempts certain categories of employees from the overtime compensation requirements set forth in Section 207(a)(1) of the FLSA.

68.    None of the Section 13 exemptions apply to Plaintiff because she did not meet the requirements for coverage under the exemptions during the relevant periods of her employment.

69.    Defendants acted willfully and either knew that their conduct violated the FLSA or showed a reckless disregard for the matter of whether their conduct violated the FLSA.

70.    Defendants did not act in good faith with respect to the conduct alleged herein.

71.    As a result of Defendants' violations of the FLSA, Plaintiff incurred harm and loss in an amount to be determined at trial, along with liquidated damages, attorneys' fees and costs of litigation, pursuant to 29 U.S.C. §216(b).

**AS AND FOR A SECOND CAUSE OF ACTION**
**(Violation of the New York Labor Laws – Unpaid Overtime Wages)**

72.    Plaintiff repeats, reiterate, and reallege each and every allegation made in the above

paragraphs of this Complaint as if fully set forth herein.

73.    The overtime wage provisions of Article 19 of the NYLL and its supporting regulations 12 NYCRR 142-2.2 apply to Defendants and protect Plaintiff.

74.    At all times relevant to this action, Plaintiff was employed by Defendants within the meaning of NYLL §§2 and 651,

75.    Under New York Law, an employee must be paid overtime, equal to at least one and one-half times the employee's regular rate of pay, for all hours worked in excess of forty (40) per week in the manner and methods provided by the FLSA.  12 N.Y.C.R.R. §142-2.2.

76.    While employed by Defendants, Plaintiff worked overtime hours on a near weekly basis of forty (40) hours of overtime per week, yet was not paid for those hours, including at an overtime rate.

77.    Defendants were aware that Plaintiff worked more than forty (40) hours per week.

78.    Defendants did not inform Plaintiff that she was entitled to overtime for hours worked over forty (40) each week, notwithstanding that she was paid a salary.

79.    Defendants failed to pay Plaintiffs overtime wages at a rate of one and one-half times Plaintiff's regular rate of pay, to which she is entitled under the NYLL and the supporting New York State Department of Labor Regulations.

80.    Plaintiff was not exempt from the overtime provisions of the New York Labor Law during the relevant periods of her employment, because she did not meet the requirements for any of the exemptions available under New York Law.

81.    Defendants acted willfully and either knew that their conduct violated the New

York Labor Law or showed a reckless disregard for the matter of whether their conduct violated the New York Labor Law.

82.     Defendants did not act in good faith with respect to the conduct alleged herein.

83.     By Defendants' knowing and/or intentional failure to pay Plaintiff overtime wages for all hours worked over forty (40) hours in a week, Defendants have willfully violated New York Labor Law §190, *et seq.*, including but not limited to §§190, 191, 193, 198, New York Labor Law §§650 *et seq.*, and the supporting New York State Department of Labor Regulations.

84.     Due to Defendants' violations of the NYLL, Plaintiff is entitled to recover from Defendants her unpaid overtime wages, attorneys' fees, costs, and pre-judgment and post-judgment interest.

85.     Plaintiff seeks liquidated damages under the NYLL.

### AS AND FOR A THIRD CAUSE OF ACTION
**(Failure to Pay Wages Under New York Labor Law 190 *et seq.*)**

86.     Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if fully set forth herein.

87.     Pursuant to the terms of Plaintiff's employment with Defendants, she earned an annual salary of $68,000.00.

88.     During the term of her employment with Defendants, Plaintiff worked overtime hours on a near weekly basis.

89.     During the term of her employment with Defendants, Plaintiff typically worked forty (40) hours of overtime per week.

90.     During the term of her employment with Defendants, Defendants were aware that Plaintiff worked overtime.

91.     During the term of her employment with Defendants, Defendants failed, refused, or otherwise neglected to pay Plaintiff for any of the overtime hours that she worked, failing to pay Plaintiff her straight time or overtime wage for those overtime hours worked.

92.     Defendants' refusal to pay Plaintiff all hours worked is willful and intentional.

93.     Defendants' refusal and failure to pay Plaintiff all hours that she worked violates NYLL Section 190 *et seq*.

94.     As a result, Defendants' failure to pay Plaintiff all hours worked, Plaintiff has been damaged in an amount to be determined at trial.

95.     As a result of Defendants' willful refusal and failure to pay Plaintiff all hours worked, pursuant to NYLL Section 190 *et seq.*, Plaintiff is entitled to costs and attorneys' fees in this action.

96.     As a result of Defendants' willful refusal and failure to pay Plaintiff all hours worked, pursuant to New York Labor Law Section 190 *et seq.*, Plaintiff is entitled to liquidated damages in an amount of one-hundred percent (100%) of the unpaid hours, plus statutory interest thereon, of an amount to be determined at trial.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (NYLL Wage Theft Protection Act 195(1) and 195(3))

97.     Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if fully set forth herein.

13

98.    Defendants have willfully failed to provide Plaintiff, as required by NYLL, Article 6, § 195(1) with written notice of their applicable regular rate of pay, regular pay day, and all such other information as required by NYLL § 195(1).

99.    Defendants have willfully failed to provide Plaintiff, as required by NYLL, Article 6, §195(3), with an accurate statement with every payment of wages, listing accurate gross wages, deductions, and accurate net wages, as the wage statements provided failed to include overtime hours worked by Plaintiffs.

100.    Through its knowing or intentional failure to provide Plaintiff the accurate wage statements required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq*., and the supporting New York State Department of Labor Regulations.

101.    Due to Defendants' willful violation of the NYLL, Article 6, §195(1), Plaintiff is entitled to damages of two hundred and fifty ($250.00) dollars for each day that Defendants failed to provide Plaintiff with an accurate wage statement, or a total of five thousand ($5,000.00) dollars, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided by NYLL, Article 6, §198(1-d)

102.    Due to Defendants' willful violation of the NYLL, Article 6, §195(3), Plaintiff is entitled to damages of two hundred and fifty ($250.00) dollars for each day that Defendants failed to provide Plaintiff with an accurate wage statement, or a total of five thousand ($5,000.00) dollars, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided by NYLL, Article 6, §198(1-d).

### AS AND FOR A FIFTH CAUSE OF ACTION
**(Retaliation in Violation of the Fair Labor Standards Act, 29 U.S.C. §215)**

103.    Plaintiff repeats, reiterates, and realleges each and every allegation made in the

above paragraphs of this Complaint as if fully set forth herein.

104.    Plaintiff engage in protected activity by making protected complaints on behalf of other employees or about February 16, 2023, to Caldwell that new hires were not being paid that week because Ramos had made errors in the onboarding process, which would result in violations of the FLSA.

105.    Defendants knew that Plaintiff engaged in such protected activity.

106.    As a direct and proximate result of Plaintiff making the aforesaid protected complaints, Plaintiff suffered an adverse action, to wit, being mercilessly chastised by Caldwell, having false and defamatory statement disseminated against her, which resulted in her pretextual termination, and failure of Defendants to provide Plaintiff with COBRA notices, resulting in Plaintiff accumulating significant medical costs.

107.    Defendants acted with recklessness, malice and/or deceit by retaliating against Plaintiff when she made her protected complaints.

108.    As a result of Defendants' retaliatory conduct, Plaintiff has suffered damages in an amount to be determined at trial.

109.    As a result of Defendants' retaliatory conduct, Defendants are liable for punitive damages.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Retaliation – New York Labor Law §215)

110.    Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if fully set forth herein.

111.    Plaintiff engage in protected activity by making protected complaints on behalf of other employees on or about February 16, 2023, to Caldwell that new hires were not being paid that week because Ramos had made errors in the onboarding process, which would result in violations of the NYLL.

112.    Defendants knew that Plaintiff engaged in such protected activity.

113.    As a direct and proximate result of Plaintiff making the aforesaid protected complaints, Plaintiff suffered an adverse action, to wit, being mercilessly chastised by Caldwell, having false and defamatory statement disseminated against her, which resulted in her pretextual termination, and failure of Defendants to provide Plaintiff with COBRA notices, resulting in Plaintiff accumulating significant medical costs.

114.    Defendants acted with recklessness, malice and/or deceit by retaliating against Plaintiff when she made her protected complaints.

115.    As a result of Defendants' retaliatory conduct, Plaintiff has suffered damages in an amount to be determined at trial.

116.    As a result of Defendants' retaliatory conduct, Defendants are liable for punitive damages.

### AS AND FOR A SEVENTH CAUSE OF ACTION
**(Violation of New York State Human Rights Law – N.Y. Exec. Law §290 *et seq.*)**

117.    Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if fully set forth herein.

118.    Plaintiff was employed by Defendants.

119.    Plaintiff is a woman, and within the protections afforded under the New York State Human Rights Law ("NYSHRL").

120.    Because she is a woman, Plaintiff was treated differently and worse than male employee Ramos, and therefore Plaintiff was discriminated against by Defendants based on her gender.

121.    As a result of Defendant's unlawful discriminatory conduct under the NYSHRL, Plaintiff has been denied employment opportunities providing substantial compensation and benefits, including but not limited to, loss of past and future income, and monetary and/or economic damages.

122.    As a result of Defendant's unlawful discriminatory conduct under the NYSHRL, Plaintiff is entitled to an award of damages, as she has suffered severe mental anguish and emotional distress, embarrassment, humiliation, loss of self-confidence and self-esteem, loss of enjoyment of life an emotional pain and suffering, and inconvenience due to Defendants' actions.

123.    In light of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, but in no event less than $1,000,000.00, plus reasonable attorneys' fees and costs of this action.

## AS AND FOR A EIGHTH CAUSE OF ACTION
**(Violation of New York City Human Rights Law – Title 8 of the New York City Administrative Code)**

124.    Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if fully set forth herein.

125.    Plaintiff was employed by Defendants.

126.    Plaintiff is a woman, and within the protections afforded under the New York City Human Rights Law ("NYCHRL").

127.    Because she is a woman, Plaintiff was treated differently and worse than male employee Ramos, and therefore Plaintiff was discriminated against by Defendants based on her gender.

128.    As a result of Defendant's unlawful discriminatory conduct under the NYCHRL, Plaintiff has been denied employment opportunities providing substantial compensation and benefits, including but not limited to, loss of past and future income, and monetary and/or economic damages.

129.    As a result of Defendant's unlawful discriminatory conduct under the NYCHRL, Plaintiff is entitled to an award of damages, as she has suffered severe mental anguish and emotional distress, embarrassment, humiliation, loss of self-confidence and self-esteem, loss of enjoyment of life an emotional pain and suffering, and inconvenience due to Defendants' actions.

130.    In light of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, but in no event less than $1,000,000.00, plus reasonable attorneys' fees and costs of this action.

## AS AND FOR A NINTH CAUSE OF ACTION
### (Retaliation – New York State Human Rights Law)

131.    Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if fully set forth herein.

132.    Plaintiff is a female employee and a member of a protected class.

133.    Plaintiff engaged in protected activity when she complained to Plaintiff's direct

supervisor, Caldwell, that she and another female employee were treated differently and worse than a male employee because of their gender.

134.    Plaintiff engaged in protected activity when she complained about unfair and unequal treatment on behalf of herself and another female employee compared to a male employee, because of gender and therefore unlawful discriminatory conduct, while working for Defendants.

135.    Defendants knew that Plaintiff had engaged in protected activity.

136.    In retaliation for Plaintiff's protected complaints, Defendants engaged in various adverse and retaliatory actions against Plaintiff.

137.    Because Plaintiff engaged in the protected activity, Cauldwell mercilessly chastised Plaintiff and disseminated false and defamatory statements against Plaintiff, which resulted in her pretextual termination, and Defendants' failure to provide Plaintiff with required COBRA notice, resulting in Plaintiff accumulating significant medical costs.

### AS AND FOR A TENTH CAUSE OF ACTION
**(Retaliation Under New York City Human Rights Law)**

138.    Plaintiffs repeat, reiterate, and reallege each and every allegation made in the above paragraphs of this Complaint as if fully set forth herein.

139.    Plaintiff is a female employee and a member of a protected class.

140.    Plaintiff engaged in protected activity when she complained to Plaintiff's direct supervisor, Caldwell, that she and another female employee were treated differently and worse than a male employee because of their gender.

141.    Plaintiff engaged in protected activity when she complained about unfair and

unequal treatment on behalf of herself and another female employee compared to a male employee, because of gender and therefore unlawful discriminatory conduct, while working for Defendants.

142.    Defendants knew that Plaintiff had engaged in protected activity.

143.    In retaliation to Plaintiff's protected complaints, Defendants engaged in various adverse and retaliatory actions against Plaintiff.

~~144.~~    Because Plaintiff engaged in the protected activity, Cauldwell mercilessly chastised Plaintiff and disseminated false and defamatory statements against Plaintiff, which resulted in her pretextual termination, and failure of Defendants to provide Plaintiff with required COBRA notices, resulting in Plaintiff accumulating significant medical costs.

## AS AND FOR A ELEVENTH CAUSE OF ACTION
### (Retaliation Under the New York Labor Law §740)

145.    Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if fully set forth herein.

146.    New York Labor Law §740 provides, in pertinent part that, "An employer shall not take any retaliatory action against an employee, whether or not within the scope of the employee's job duties, because such employee…discloses or threatens to disclose to a supervisor or to a public body, an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation".

147.    New York Labor Law §740 defines a "retaliatory action" as an adverse action taken by an employer or agent to discharge, threaten, penalize, or in any other manner discriminate against an employee or former employee, and includes adverse employment actions, including but not limited to discharge, suspension, or demotion.

148.    Defendants were Plaintiff's employers.

149.    Plaintiff engaged in protected activity by making protected complaints to Caldwell that new hires were not going to be paid properly, in violation of the NYLL and the FLSA.

150.    In retaliation for Plaintiff's protected complaints concerning what she reasonably believed to be the violation of a law, rule or regulation, Defendants engaged in various adverse and retaliatory actions against Plaintiff.

151.    Because Plaintiff engaged in the protected activity, Caldwell mercilessly chastised Plaintiff and disseminated false and defamatory statements against Plaintiff, which resulted in her pretextual termination, and failure of Defendants to provide Plaintiff with required COBRA notices, resulting in Plaintiff accumulating significant medical costs.

## AS AND FOR A TWELFTH CAUSE OF ACTION
### (Defamation *per se*)

152.    Plaintiffs repeat, reiterate, and reallege each and every allegation made in the above paragraphs of this Complaint as if fully set forth herein.

153.    On February 22, 2023, Defendants, through correspondence executed by Randolf Palmeira, published a termination letter alleging that on February 15, 2023, Plaintiff verbally attacked her supervisor in Plaintiff's office.

154.    The February 22, 2023 letter further alleges that on February 16, 2013 [*sic*], Plaintiff used threatening behavior and language against her supervisor and further barricaded her in her office, threatening both her life and safety.

155.    The allegations set forth in the termination letter are false and defamatory statements made by Cauldwell to Randolf Palmeira (Palmeira), who executed and published the

false and defamatory statements.

156.    Plaintiffs' termination, at which the false and defamatory statements were repeated, was attended by Ms. Ruth Fernandez, Igor Kiposki and Kendra Caldwell.

157.    The statements were made with the requisite level of fault in that Defendants knew, or should have known, that the information disseminated about Plaintiff was false.  Thus, at a minimum, Defendants were negligent in making the statements, for the purpose of causing individuals to believe that Plaintiff had verbally attacked her supervisor, and used threatening behavior and language against her, and further barricading her in her office, threatening both her life and safety.

158.    The statements were made without Plaintiff's consent or authorization, either express or implied.

159.    The false statements made by Defendants charge Plaintiff with serious crimes, to wit: false imprisonment, without limitation.

160.    Because Defendants charged Plaintiff with a serious crime, it is presumed that Plaintiff has, or will, suffer damages.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION
**(Wrongful Termination of Health Insurance Benefits under ERISA §502)**

161.    Plaintiffs repeat, reiterate, and reallege each and every allegation made in the above paragraphs of this Complaint as if fully set forth herein

162.    Prior to the end of her employment with Defendants, Plaintiff, and her family members, were insured under Defendants' Consumer Directed Health Plan group policy of health insurance, administered by UHP Administrators, Inc. dba UHP Administrators.

163.    ERISA §502(a)(1)(B), codified at 29 U.S.C. §1132(a)(1)(B), authorizes a participant or beneficiary of a plan to bring a civil action to recover benefits due under the terms of the plan, to enforce their rights under the terms of the plan, and to clarify their rights to future benefits under the plan.

164.    ERISA defines an "employee welfare benefit plan" and "welfare plan" as any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, medical, surgical, or hospital care or benefits. *See* 29 U.S.C. §1002(1).

165.    The policy of group health insurance under which Plaintiff, and her family were insured, a Consumer Directed Health Plan group policy of health insurance for Defendants' employees and their members, administered by UHP Administrators, Inc., dba UHP Administrators, meets the definition of an employee welfare benefit plan under ERISA under which Plaintiff, and her family, were qualified beneficiaries.

166.    Defendants' termination of Plaintiffs' health insurance plan was unlawful under ERISA and in violation of the terms of the plan.

167.    Defendants' violations of ERISA have damaged Plaintiff in an amount to be determined at trial.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION
### (Claims for Other Appropriate Relief Under ERISA §502(a)(3))

168.    Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if fully set forth herein.

169.    The policy of group health insurance under which Plaintiff, and her family members were insured, meets the definition of an "employee welfare benefit plan" under ERISA.

170.    Defendants are a fiduciary as such term is defined by ERISA. 29 U.S.C. §1002(21).

171.    ERISA requires that a fiduciary "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and – with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." 29 U.S.C. §1104(a)(1)(B).

172.    Defendants' termination of Plaintiff's health insurance benefits was unlawful and a breach of their fiduciary duties.

173.    Defendants' breach of their fiduciary duties and have damaged Plaintiff in an amount to be determined at trial.

174.    Plaintiff is entitled to equitable relief under ERISA §502(a)(3), including retroactively covering Plaintiff's, and her family members, under the group policy of health insurance from the date of Defendants' termination onward.

### AS AND FOR A FIFTEENTH CAUSE OF ACTION
**(Wrongful Termination of Health Insurance Under 29 U.S.C. §1161 and 4980B, and New York Insurance Law §3221(m))**

175.    Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if fully set forth herein.

176.    Congress has recognized the need for employer-sponsored health insurance plans, such as in this action, to provide beneficiaries with the option to continue benefits under the plan even after termination of employment.

177.    As a result, under 29 U.S.C. §1161, a sponsor of a group health care plan must provide that each qualified beneficiary who would lose coverage under the plan as a result of, among other things, termination of employment, is entitled, under the plan, to elect continuation coverage under the plan.

178.    By terminating Plaintiff's health insurance and failing to provide Plaintiff the opportunity to continue coverage under the plan, Defendants violated 29 U.S.C. §1161.

179.    26 U.S.C. §4980B sets forth notice requirements regarding continuation of coverage requirements.  Among other things, the plan administrator must notify the beneficiary of his or her rights under federal law to continuation coverage in the event of a qualifying event such as termination of employment.

180.    By failing to provide Plaintiff any notice of her termination of health care or any notice of her rights to continuation coverage, Defendants violated 26 U.S.C. §4980B.

181.    26 U.S.C. further establishes a $110 per day statutory penalty for a violation of its provisions.  Plaintiff is entitled to $110 per day for each of Defendants' violations of 26 U.S.C. §4980B.

182.    Plaintiff is further entitled to costs of medical expenses incurred.

183.    New York State Insurance Law §3221(m) provides that a group policy of health insurance "shall provide that if all or any portion of the insurance on an employee or member insured under the policy ceases because of termination of employment or membership in the class or classes of eligible coverage under the policy, such employee or member shall be entitled without evidence of insurability upon application to continue his hospital, surgical or medical expense insurance for himself or herself and his or her eligible dependents, subject to all of the group

policy's terms and conditions applicable to those forms of benefits."

184.    By failing to provide Plaintiff with a continuation of her health care coverage, Defendants have violated New York State Insurance Law §3221(m).

185.    Plaintiff is entitled to compensatory and statutory damages under state and federal law for Defendants' wrongful termination of health care benefits and its failure to provide Plaintiff with a continuation of health care benefits as required under federal and state law.

## AS AND FOR A SIXTEENTH CAUSE OF ACTION
### (Counsel Fees, Expert Fees, and Costs)

186.    Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if fully set forth herein.

187.    Defendants failed to pay Plaintiff her wages and wage supplements, in violation of the NYLL and the FLSA.

188.    NYLL §198, FLSA, NYSHRL, NYCHRL, and NYLL 740 provides for reimbursement of costs and counsel fees.

189.    Based upon all of the aforesaid, Plaintiffs are entitled to costs and attorney's fees.


## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays for judgment as follows:

(a) On Plaintiff's First Cause of Action, judgment awarding Plaintiff an amount to be determined at trial, but in no event less than $1,000,000.00, plus interest and punitive damages;

(b)    On Plaintiff's Second Cause of Action, judgment awarding Plaintiff an amount to be

determined at trial, but in no event less than $1,000,000.00, plus interest and punitive damages;

(c)    On Plaintiff's Third Cause of Action, judgment awarding Plaintiff an amount to be determined at trial, but in no event less than $1,000,000.00, plus interest and punitive damages;

(d)    On Plaintiff's Fourth Cause of Action, judgment awarding Plaintiff an amount to be determined at trial, but in no event less than $1,000,000.00, plus interest and punitive damages;

(e)    On Plaintiff's Fifth Cause of Action, judgment awarding Plaintiff an amount to be determined at trial, but in no event less than $1,000,000.00, plus interest and punitive damages;

(f)    On Plaintiff's Sixth Cause of Action, judgment awarding Plaintiff an amount to be determined at trial, but in no event less than $1,000,000.00, plus interest and punitive damages;

(g)    On Plaintiff's Seventh Cause of Action, judgment awarding Plaintiff an amount to be determined at trial, but in no event less than $1,000,000.00, plus interest and punitive damages

(h)    On Plaintiff's Eighth Cause of Action, judgment awarding Plaintiff an amount to be determined at trial, but in no event less than $1,000,000.00, plus interest and punitive damages

(i)    On Plaintiff's Ninth Cause of Action, judgment awarding Plaintiff an amount to be determined at trial, but in no event less than $1,000,000.00, plus interest and punitive damages

(j)    On Plaintiff's Tenth Cause of Action, judgment awarding Plaintiff an amount to be determined at trial, but in no event less than $1,000,000.00, plus interest and punitive damages

(k)    On Plaintiff's Eleventh Cause of Action, judgment awarding Plaintiff an amount to be determined at trial, but in no event less than $1,000,000.00, plus interest and punitive damages

(l)    On Plaintiff's Twelfth Cause of Action, judgment awarding Plaintiff an amount to be determined at trial, but in no event less than $1,000,000.00, plus interest and punitive damages

(m)    On Plaintiff's Thirteenth Cause of Action, judgment awarding Plaintiff an amount to be determined at trial, but in no event less than $1,000,000.00, plus interest and punitive damages

(n)    On Plaintiff's Fourteenth Cause of Action, judgment awarding Plaintiff an amount to be

determined at trial, but in no event less than $1,000,000.00, plus interest and punitive damages

(o)    On Plaintiff's Fifteenth Cause of Action, judgment awarding Plaintiff an amount to be determined at trial, but in no event less than $1,000,000.00, plus interest and punitive damages

(p)    On Plaintiff's Sixteenth Cause of Action, judgment awarding Plaintiff counsel fees, expert fees, and costs.

(q)    Awarding Plaintiff punitive damages;

(r)    Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: February 22, 2024
        Garden City, New York

                                        /s *Michael Kupferberg*
                                        Michael Kupferberg, Esq.
                                        THE SIEGEL LAW FIRM, P.C.
                                        *Attorneys for Plaintiff*
                                        591 Stewart Avenue, Suite 550
                                        Garden City, NY 11530
                                        (516) 558-7559